The WESTERN CASUALTY AND SURE-
TY COMPANY, Appellant,

v.

Alfredo R. GONZALES, Appellee.

No. 823.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 7, 1974.

Rehearing Denied March 14, 1974.

Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellant.

Robert D. Nogueira, Beeville, for appellee.

## OPINION

BISSETT, Justice.

This is a workman's compensation case. The Western Casualty and Surety Company, the compensation insurance carrier, sued to set aside the Industrial Accident Board's award for total and permanent disability to Alfredo R. Gonzales, the injured workman. The parties entered into a stipulation relating to the injury having occurred during the course of employment, the wage rate and medical expenses. Following a jury trial, judgment was rendered in favor of Alfredo R. Gonzales for total and permanent disability. The Western Casualty and Surety Company has appealed. We affirm.

Appellant's position in this appeal is that appellee was not entitled to recover for a general injury but was limited in his recovery to a specific injury, his left arm. Complaint is made that the trial court erred in submitting Special Issue No. 2, over appellant's objection. It asserts there was no evidence to support a finding that appellee suffered a general injury; that there was no evidence to show that the injury to appellee's left hand extended to and affected any part of his body other than his left hand; that the greater weight of the evidence showed that the injury to appellee's left hand did not extend to and affect any portion of his body other than to his left hand and arm; that the Issue did not submit an ultimate issue upon which a

judgment could be based; and that the Issue constituted a global and general charge in that it did not limit the jury to a finding of whether appellee suffered an extension of the injury to a specific member of his body, or whether said injury extended to and affected some other portion other than a specific member.

It is appellee's contention that the injury and medical treatment destroyed the usefulness of the left hand and arm, disabled the shoulder, caused swelling and intense pain in the left chest of such intensity as to make use of the left hand and arm impossible, and effectively crippled appellee in the lumbar spine and both lower extremities; and the injury otherwise extended to and affected parts of appellee's body other than his left hand and arm, thus creating a general injury which rendered him totally and permanently disabled.

Appellee was injured in Beeville, Texas on June 3, 1968. He was in the process of skinning insulation from a wire with a pocket knife, when he cut the palm side of his middle finger on his left hand. The cut severed the tendon running from the finger into the hand. He was taken by his employer to Dr. Miller in Beeville, where he received emergency treatment, and was sent by Dr. Miller to Corpus Christi, to be examined and treated by Dr. Balme, a plastic surgeon. He was hospitalized by Dr. Balme, and was released after having spent one or two nights in the hospital. There is evidence that Dr. Balme attempted to obtain the use of an operating room immediately following appellee's admittance to the hospital but was unable to do so. Apparently, appellee did not receive any medical treatment at the hospital. Appellee went back to work as soon as he reached Beeville. He experienced difficulty in performing the tasks incidental to his work because the finger that was cut was stiff and kept getting in the way since he could not bend it.

Appellee was re-hospitalized on July 9, 1968. The next day Dr. Balme performed a tendon transplant surgery on him for the purpose of removing the stiffness from and permitting flexion of the finger. Appellee returned to work about two weeks later, but still experienced stiffness in the finger and was unable to flex the finger or to use it in the normal way. During the months that followed, appellee was given electric shocks "to free the hand". He received such treatment two or three times each week. There was no improvement and Dr. Balme performed a second operation on appellee in October, 1968 to free the adhesion surrounding the repaired tendon in appellee's finger. In due course, appellee returned to work, but the second operation, like the first, was not successful. From the date of injury until the second operation, appellee experienced a growing weakness in his left hand and left arm. After the second operation, appellee complained of pain in the hand and arm and of a continuing weakening thereof, despite physical therapy and exercises in accordance with instructions which were given him by Dr. Balme. On July 23, 1969, Dr. Barnes, an orthopedic surgeon of Corpus Christi, amputated the injured finger.

During the period between the second operation and the amputation of the finger, appellee, from time to time, saw Dr. Miller, the doctor who had seen him immediately after he was injured. After the amputation, appellee began seeing Dr. Miller on a regular basis, and from that time until the time of trial was seen by Dr. Miller on about seventy-five different occasions. While being treated by Dr. Miller, appellee, in addition to suffering from the damaged finger itself, also complained of pain in his left hand, left arm, left shoulder, chest and back. Dr. Miller provided him with a chest strap. Appellee was given pain pills by Dr. Miller until March, 1971, when injections of nyloxin, a pain reliever, were administered once a week into appellee's arm. Such injections into the arms were later discontinued because they caused large welts. The medication was then injected into appellee's legs above each knee. On October 23, 1971, appellee's right leg was injected successfully,

but the nurse was unable to get the medicine to flow through the needle into appellee's left leg. Appellee said that when the needle was inserted into his leg it felt like "acid". This development was reported by Dr. Miller to Dr. Barnes on October 30, 1971. On Dr. Barnes' advice, the injections were stopped.

Subsequently, appellee became quite ill, suffered some sort of paralysis for about two weeks that prevented him from getting out of bed and from walking. He experienced low back pains, numbness in the lower extremities, and developed a bilateral limp which affected his back. He was equipped with a back brace, and afterwards began using a walking cane; he was still using the brace and the cane at the time of trial.

Dr. Miller testified that the pain which appellee experienced in the left lateral portion of his chest was part and parcel of the involvement of the entire left arm. He said that the original injury started a chain of events and that what happened from that time on was "anybody's guess". He realized that it was hard to believe that appellee sustained so much disability from a severed tendon in a finger, but, as he put it, "this sequence of events has happened to this man and we will have to face it". Initially, Dr. Miller believed that there was no connection between the problems with appellee's back and knees and the injury to the finger on his left hand, but as time went by and appellee became so immobile and disabled, he concluded that whatever triggered the injury to the left arm and left shoulder could have triggered the back trouble. He found nothing medically that indicated the source of the back and leg trouble. Appellee was a fine, physically healthy person before the injury. Dr. Miller told the jury that "these things" (chest, back and leg problems) could have happened to appellee without the injury to his finger, but his personal opinion was that they would not have happened but for such injury. He made tests for rheumatoid arthritis in appellee's back and leg.

They were negative. He attributed the trouble to appellee's back and legs to arthritis, notwithstanding that all x-rays were negative and did not show calcium deposits, but in using the term "arthritis", the doctor meant stiffness and tenderness in the spine and knees, particularly the left knee. He further testified that appellee would be in good health and still working if he had not suffered the cut on his finger.

It was definitely established that, at the time of trial, the conditions of appellee's back, knees, hand, arm, shoulder and chest were such that he was totally and permanently disabled. Dr. Miller determined that appellee was a conscientious and truthful man. When asked if he believed that appellee's subjective complaints were true, he said: "implicitly, absolutely". There was no evidence that appellee was a malingerer.

Mr. J. S. Hall, appellee's employer, testified that appellee was one of his best servicemen. Mr. Fred Watson, appellee's supervisor, stated that appellee, who was about 31 years of age at the time of his injury, had gone to work for Hall's Industries when he (appellee) was about 17 or 18 years of age, that he was a good worker and an exceptional man, and that he was the best of 25 or 30 men that he (Watson) had hired during his twenty-four and one-half years with Hall's Industries. He said that appellee was a strong man, had never been seriously ill, and had never been injured prior to June 3, 1968, but that appellee's physical ability to work steadily decreased after the injury, even though he earnestly and conscientiously tried to do his job. When it became evident that appellee could not do the work that he had been doing, Watson took care to specially select jobs for him. On at least one occasion, Watson had to send appellee home because his shoulder was bothering him. Watson further testified that appellee, following the injury, sustained "an appreciable loss of strength in his left hand, left arm and shoulder". Watson also said that

in the fall of 1971, he went to appellee's house and found that appellee could not get out of bed; following a two or three week interval, appellee attempted to work and Watson put him on the ground to handle eight foot joints of pipe. Appellee could not perform this task and Watson then told appellee "Shorty, I hate to tell you, but we can't use you . . . you are becoming a hazard". That happened in January, 1972, and appellee stayed on the job until noon the next day, and, according to Watson, was never permitted to work thereafter. At that time, Watson observed an obvious weakness in appellee's "left side, left arm", and when asked if appellee "was unable to do the work", replied: "He couldn't".

Appellee testified that he lost the grip in his hand after the injury, and after the second operation performed by Dr. Balme, experienced pain in his chest; that his chest "would swell up", that he had to use a corset around his chest, and that his arm, shoulder and chest hurt badly. After the cessation of the nyloxin shots, appellee said that he got "weaker, weaker and weaker", that he had trouble walking, and he was constantly bothered by pain in his arm, shoulder, chest, back and legs. He testified that he never had any chest, back or leg trouble before the injury, but that after the injury his back bothered him when he tried to work. When asked if he wanted to work, he said: "Yes sir, if I can. But my back, I don't know who is going to give me a job with a cane in one hand and I don't got no grip".

In summary, this Court is faced with a record which shows that appellee was an exceptional workman who was the best out of twenty-five or thirty men hired by his employer during twenty-four and a half years; that during the course of his employment, he suffered a severe injury to his middle finger on his left hand; that such injury resulted in the performance of two operations on his left hand, during at least one of which tendon graft material was obtained from his left arm; that the operations failed to help him; that despite the operations, therapy (which included squeezing a rubber ball and a gripper, receiving electric shocks, using heat pads) and aids (a corset or chest strap, a back brace, a clamp for his finger, and a cane to assist him in walking), his condition worsened (he experienced pain in his left hand, arm, and shoulder; he suffered atrophy of the left arm and shoulder; he had swelling and pain in his chest); part of the middle finger of the left hand was amputated; the pain in his arm, shoulder, side and chest became so bad that he was given pain shots; after these shots, he suffered a temporary paralyssis and he then developed trouble in his legs and back. From the date of injury on June 3, 1968, until appellee was discharged in January, 1972, he continously tried to work, but was unable to do so. To his supervisor, Mr. Watson, and to the doctor who observed appellee most often, Dr. Miller, there was no doubt that appellee was trying to work and trying to follow the therapy prescribed for him. The evidence was virtually undisputed that appellee was, in fact, totally and permanently disabled.

■ We first consider the appellant's points of error Nos. Seven, Eight, and Nine wherein it is contended that the trial court erred in overruling appellant's Objections to the Charge of the Court in the submission of Special Issue No. Two for the reasons already stated. That issue and the jury's answer thereto reads, as follows:

"Issue No. 2

Do you find from a preponderance of the evidence that the injury to Alfredo Gonzales' left hand extended to and affected any part of his body other than his left hand?

Answer 'We do,' or 'We do not.'

Answer: We do."

If Special Issue No. Two stood alone, we would sustain the appellant's points of er-

ror under the authority of Travelers Insurance Company v. Marmolejo, 383 S.W.2d 380 (Tex.Sup.1964). In *Marmolejo,* Special Issue No. One inquired whether the injury to plaintiff's foot "extended to or affected parts of the body other than the foot, thereby causing incapacity." The jury answered in the affirmative. On appeal to the Texas Supreme Court, the petitioner asserted error in the submission of Special Issue No. One because:

". . . (2) that an affirmative answer thereto could mean that the injury extended either to the leg or to other parts of the body, and would therefore afford no basis for awarding a recovery for general incapacity; and (3) that the same is not an ultimate issue and would not establish any ultimate fact upon which a judgment could be based. . . ." *Id.* at p. 381.

The Supreme Court held that the objections to Special Issue No. One were well taken; and said:

". . . the issue in question merely inquired whether the injury extended to 'parts of the body other than the foot.' When this issue is considered in the light of defendant's objections thereto, the jury's answer constitutes at most a finding that the injury extended either to the leg above the knee or to the body generally. If the injury extended only to the leg above the knee, plaintiff was entitled to compensation for loss of use of the leg but not to an award for general disability. If incapacity was caused by an extension of the injury to portions of the body other than a specific member, plaintiff is entitled to recover for general incapacity. In view of the objections to the charge, therefore, the jury's answer does not establish any ultimate fact upon which a judgment could be based." *Id.* at p. 382.

In 2 Texas Pattern Jury Charges P.J.C. 26.14, at p. 147, it is stated:

"CAVEAT. Care should be taken in wording the issue if the specific injury is to a lesser member of the body (e. g. foot), in which event it could be contended that the injury extended to and affected either the body generally or merely a greater member (e. g., leg above the knee). An issue inquiring whether the specific 'injury extended to and affected parts of the body other than the left foot and leg below the knee, would be erroneous because an affirmative finding would not establish whether plaintiff is entitled to benefits for a general injury or only for a specific injury involving the leg at or above the knee. Travelers Ins. Co. v. Marmolejo, 383 S.W.2d 380 (Tex.1964)."

Applying *Marmolejo* to the case at bar, by "plugging" Special Issue No. Two into the CAVEAT of Texas Pattern Jury Charges, it is apparent that the jury's answer to Special Issue No. Two, *vel non,* would not establish whether the appellee was entitled to benefits for a general injury or only for a specific injury involving the left arm; Special Issue No. Thirteen, however, cures the objections to Special Issue No. Two.

Special Issue No. Thirteen, and the jury's answer thereto, is as follows:

"Special Issue No. 13

Do you find from a preponderance of the evidence that such injury was not confined to his left arm below the shoulder?

Answer 'It was confined to his left arm below the shoulder'

or

'It was not confined to his left arm below the shoulder.'

Answer: *It was not, confined to his left arm below the shoulder.*"

The answer to Special Issue No. Thirteen therefore gives certainty to the effect of

the jury's answer to Special Issue No. Two by eliminating the possibility that such jury answer could be interpreted as meaning that the injury to a finger, a "lesser member of the body", extended to and affected *either* the appellee's left arm—a specific injury—or the body generally. With the elimination of the possible "specific injury to the left arm" interpretation of the answer to Special Issue No. Two, it follows that the answer to Special Issue No. Two can only mean that the injury extended to and affected the body generally. We overrule the appellant's points of error Nos. Seven, Eight, and Nine.

We next consider appellant's points of error One to Six, both inclusive, wherein it is asserted that there was no evidence to support a recovery for a general injury, or alternatively, that the jury findings that the injury to appellee's left hand extended to and affected part of his body other than the left hand are against the weight of the evidence. The "no evidence" points require us to consider only the evidence and inferences favorable to the questioned jury finding and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup.1965). The "against the weight of the evidence" points require that we consider and weigh all of the evidence presented by the record, including evidence which tends to prove the existence of vital facts as well as evidence which tends to disprove their existence. Southern Pacific Company v. Stanley, 473 S.W.2d 52 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); Gonzalez v. Layton, 429 S.W.2d 215 (Tex.Civ.App.—Corpus Christi 1968, n. w. h.).

The jury is the sole judge of the facts proven, the credibility of the witnesses, and the weight to be given their testimony; the jury may also draw reasonable inferences and deductions from the evidence adduced before it. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Garza v. Anderson, 417 S.W.2d 368, 370–

371 (Tex.Civ.App.—Corpus Christi 1967, n. w. h.). Under the facts presented, when the record as a whole is considered, we are of opinion that appellee did sustain a general injury which was caused by a specific injury which was not confined to his left arm below the shoulder, but extended to and affected other parts of his body. Maryland Casualty Company v. Sosa, 425 S.W.2d 871 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e., per curiam Tex. Sup., 432 S.W.2d 515); General Accident Fire & Life Assur. Corp. v. Murphy, 339 S.W.2d 392 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.).

Where disability or death results from medical treatment instituted to cure or relieve an employee from the effects of his injury, it is regarded as having been proximately caused by the injury and is compensable; such aggravation is regarded as a probable sequence and natural result likely to flow from the injury. 62 Tex. Jur.2d, Workmen's Compensation § 68, p. 621, and cases cited therein; Liberty Mutual Insurance Company v. Pool, 449 S.W. 2d 121 (Tex.Civ.App.—Texarkana 1969, writ ref'd n. r. e.); McAdams v. Fidelity and Casualty Co. of New York, 406 S.W. 2d 518 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.); Maryland Casualty Company v. Sosa, supra.

In *Sosa*, the jury found that the injury to the plaintiff's left hand extended to and affected the plaintiff's left shoulder and body generally. Based upon this finding, the trial court entered judgment in favor of the plaintiff for total and permanent disability. On appeal, the appellant asserted that there was no evidence and insufficient evidence to support the jury's finding that the injury to the plaintiff's left hand extended to and affected his left shoulder and that such finding was against the overwhelming weight and preponderance of the evidence. Following Sosa's injury, a cast had been placed on his left arm. Later Sosa began to complain of pain in his shoulder. He was examined by several

doctors including an orthopedic surgeon, who testified that Sosa had developed adhesions in his shoulder joints; that the adhesions were caused by lack of use of the shoulder; that the cast on his arm caused him not to exercise his shoulder; and that the cast was necessary to treat the injury to his left hand. The judgment of the trial court was affirmed.

In the case at bar, as in *Sosa*, there is medical testimony of actual injuries to the body generally (the left shoulder, the left side of the chest, the legs and the back) as a result of treatment given Gonzales' left hand. In addition to the evidence that has already been summarized, there is other evidence that appellee sustained a general injury. In a letter report dated December 10, 1971 to the appellant's claims manager, Dr. Barnes reported that appellee had developed acutely painful knees following injections which were given for relief of pain in the left upper extremity and chest; that examination showed some active weakness in the quadricepa muscles, both thighs; that he walked with a bilateral limp; that examination of the lumbar spine showed tenderness in the lumbar area with some flattening of the lumbar lordotic curve; that he had an acute myositis as a result of the injections; and "that the lumbar area is apparently a strain as a result of the bilateral limp that the patient has developed since October 30, 1971". Dr. Barnes was asked: "Would you connect the injections with a second injury, or would you say that they are a second injury?" He answered: "That might be the implication". Throughout the record there are other statements by Dr. Barnes relating to a "second injury", an "additional injury" or a "subsequent injury", with the clear implication that such injury resulted from the nyloxin shots which were injected into appellee's legs in October, 1971.

█ We agree with appellant that pain alone which extends from an injury to a specific member of the body into the body does not make the injury a general one

and will not support a finding of general incapacity. See Texas Employers' Insurance Association v. Shannon, 462 S.W.2d 559 (Tex.Sup.1970). Here, there is more. Appellee's back, legs, shoulder and chest do not hurt only when his left hand and arm below the shoulder hurts. In addition to pain in the various parts of the body, there is evidence of general disability and incapacity in the areas of the left shoulder, the chest, the left side, the back and legs, as shown by weakness in the shoulder and left side, numbness, weakness and stiffness in the knees, and tenderness and stiffness in the back. Appellee now has a bilateral limp that he never experienced before; he is unable to walk without the use of a cane; he wears a back brace; and he experiences a swelling in the left chest area when he attempts to use his upper left extremity.

█ We have examined the record in its entirety, and have weighed the evidence which tends to prove that appellee sustained a general injury which was caused by a specific injury that extended to and affected parts of his body other than his left arm below the shoulder, as well as evidence contra thereto. We hold that there is evidence of probative value to support the jury's answers to Special Issues Nos. Two and Thirteen. After considering and weighing all of the evidence, we further hold that the jury findings are not against the weight of the evidence. Accordingly, appellant's points One to Six, are overruled.

The judgment of the trial court is affirmed.

## OPINION

## ON MOTION FOR REHEARING

█ The vigorous motion for rehearing filed by appellant deserves an answer. Appellant contends that the evidence in this case does not meet the test to be applied, which test is, in appellant's words, "whether or not, in the opinion of the doctor, there is a medical probability (not a

possibility)" that there was a causal connection between the specific injury and the general disability. We disagree. The test should not be limited to mere "medical probability". The proper test to be applied in this appeal is whether the evidence in its entirety, including medical, lay and circumstantial evidence, shows that the specific injury in reasonable probability caused the general injury. "Particular words from the medical experts are not necessary to create a probability". Parker v. Employers Mutual Liability Ins. Co. of Wisconsin, 440 S.W.2d 43, 49 (Tex.Sup. 1969).

Insofar as we are able to determine, the restrictive test advocated by appellant is required to be met only in the following instances: *first,* where the question of causation is peculiarly within the realm of scientific knowledge; *second,* in predicting the future manifestations of a present injury; and, *third,* in malpractice cases. See Insurance Company of North America v. Myers, 411 S.W.2d 710, 713–714 (Tex.Sup.1966). The case at bar does not fall within any of the above mentioned categories.

It is now settled that lay testimony is adequate in some cases to prove that the specific injury in reasonable probability caused the claimed result. The Supreme Court, in Griffin v. Texas Employers' Insurance Association, 450 S.W.2d 59 (Tex. Sup.1970), said:

> ". . . In some cases, lay testimony supplied this necessary proof by showing such circumstances as the nature and seriousness of the original injury; the immediate onset and the successive and continuous development of the symptoms or abnormality; or the progressive worsening of the condition. In such cases, lay proof of a sequence of events provided a strong, logically traceable connection between cause and result. . . ."

It was held in Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 (1938), that evidence "largely circumstantial", together with the opinion of doctors that the lifting and straining by the injured workman *could* have caused the ruptured blood vessel, was sufficient to show that it was caused in the course of employment.

One of the early cases on the subject is Atkinson v. United States Fidelity & Guaranty Co., 235 S.W.2d 509 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.). Justice Norvell, in writing for the Court, recognized the rule that something more than a mere "possibility" is necessary to establish a finding of causal connection. He clarified the rule in these words:

> ". . . In determining whether or not a showing of mere possibility and no more has been made, all of the pertinent evidence on the point must be considered. The fact that an expert medical witness, in speaking of cause and effect uses such expressions as 'might cause', 'could cause', 'could possibly cause', or phrases similar thereto, does not preclude a jury finding of casual connection, provided there be other supplementary evidence supporting the conclusion. Causal connection is generally a matter of inference, and possibilities may often play a proper and important part in the argument which establishes the existence of such relationship. It is well settled that the medical expert in testifying as to a present or past physical condition, may express his opinion as to causal relationship in terms of possibility."

The above case has been cited by our Supreme Court on several occasions.

In Insurance Company of North America v. Myers, supra, the Supreme Court said:

> ". . . Reasonable probability, in turn, is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase. . . ."

The instant case is closely analogous to Insurance Company of North America v.

Kneten, 440 S.W.2d 52 (Tex.Sup.1969). In that case, the evidence consisted of medical testimony, factual circumstances and lay testimony. There, as here, there was the problem of proof of causal connection between the specific injury (an electrical shock) and the claimant's disability which resulted from a subsequent heart attack. The majority opinion of the Supreme Court held that the "possibility" testimony of the doctor, when coupled with the factual circumstances of the case, was sufficient for the jury to draw conclusions as to the causal connection of the electrical shock and the heart attack.

The substance of the testimony of Dr. Sloan in the Kneten case is strikingly similar to that of Dr. Miller in the instant case insofar as "medical probability" as opposed to "medical possibility" is concerned. When asked if in reasonable probability the electric shock and the heart attack were causally related, Dr. Sloan answered: "I don't know . . . I think there is a possibility it could have . . . I don't think that you can say without medical doubt though because I have doubts whether it did or did not, you see". When Dr. Sloan was asked if he could put his finger on the cause of the heart attack, he replied: "I can't say that (it) did have, and I certainly can't say it didn't have something to do with it . . . I think that the chronological events that have happened makes it a strong possibility that this could help precipitate a heart attack". When asked to look at the question from the standpoint of circumstantial evidence and say if medical probability was reasonable in this case, Dr. Sloan said: "Well, circumstantially, I would say, yes, strong possibility".

The testimony of Dr. Miller in the case at bar is just as strong, or stronger, on the issue of "reasonable probability" as was the testimony of Dr. Sloan in the Kneten case. The testimony of appellee himself, and of his supervisor, Mr. Watson, plus the medical evidence, show the circumstances of appellee's injury, what occurred thereafter, and the immediate onset of disability. The lay proof of a sequence of events provided a strong, logically traceable connection between the specific injury that extended to and affected other parts of the body and the resultant general disability. This lay evidence supports the conclusions and opinions of Dr. Miller, even though the doctor expressed his opinion as to causal relationship in terms of "possibility". Causal connection was not left to surmise or conjecture by the jury. The evidence as a whole presented a fact issue of reasonable probability of causation, and such evidence is legally and factually sufficient to support the findings by the jury.

As stated by our Supreme Court, in *Kneten,* "there are areas for jury and judge to construe the testimony of the doctor". This case presents such an area.

Appellant's motion for rehearing is overruled.