SHORES, Justice.
Rosita Sanford sought damages, alleging that the defendants, co-employees of hers, had negligently or wantonly injured her. The complaint as amended charged that the defendants negligently, wantonly, or as the result of willful conduct injured the plaintiff. Her husband, Danny, sought damages for loss of consortium. The trial court entered a summary judgment in favor of all defendants. The plaintiffs appeal. We affirm.
A thorough review of the affidavits and depositions shows the material facts to be without dispute. Rosita Sanford, Jeff Brasher, James Weeks, and Larry Darnell were employees of Oxford Industries, Inc., at its Lanier Clothes plant in Fayette, Alabama. Sanford and Brasher were employees in the cutting department. Weeks was the supervisor of the cutting department employees. Darnell was the plant manager.
Sanford’s injuries occurred on February 27,1986, and arose out of and in the course of her employment with Oxford Industries. She has received workmen’s compensation benefits for her injuries.
Sanford was on duty and at her work place at the time of the incident. She had been sitting on a work stool and had just finished sew barring a bundle of jacket sleeves. She stood to put up the bundle. In the meantime, 20-year old Jeff Brasher, who was also on duty and working nearby, slipped in behind her and slid the stool back about six inches or so as a practical joke. Brasher said he thought that Sanford would catch herself or see the stool. Instead, she fell, hit the floor and was injured.
Weeks and Darnell did not witness the incident and were not in the cutting room when it occurred. Weeks was in his office filling out a lining report. Darnell was likewise elsewhere in the plant when the incident occurred. Neither Weeks nor Darnell knew in advance that Brasher intended to pull a prank on Sanford.
There had been previous instances of horseplay and pranks in the cutting department. Besides the supervisor, there were about 11 employees in the department, male and female together. The male employees were responsible for most of the horseplay or pranks. Prior to the incident in question, this activity had consisted of such things as greasing the handles of knives and spreaders (so that the user would get grease on his or her hands), shooting rubberbands, and crawling under tables and grabbing a co-worker’s leg to scare him or her. Ño one had been injured during any of those episodes and, until Sanford’s incident, apparently no one had tried to pull a stool out from under a coworker.
Sanford testified that no one had played a prank on her before the incident in ques *31 tion and that she had never complained to Weeks or Darnell about any horseplay. Other employees in the cutting department had complained to both Weeks and Darnell. Both became aware that certain employees had been greasing knife or spreader handles and shooting rubberbands, and, in response, they called employee meetings and told the persons responsible to stop such activity. Weeks had specifically reprimanded Brasher for crawling under a work table instead of walking around. None of the employees was disciplined for horseplay or pranks. Darnell, as plant manager, had felt that a verbal reprimand was sufficient.
Sanford and Brasher were friends. No ill will or animosity existed between them. Sanford testified that she did not know what Brasher had intended when he pulled back the stool. Brasher testified that he did it only as a joke and never intended that Sanford fall or hurt herself. Weeks and Darnell, who were not present when the incident occurred, testified, without contradiction, that they had no personal participation in the incident and did not encourage or intend that any employee cause injury to another employee, including Sanford.
Does the complaint in this case state an actionable claim against co-employees, under § 25-5-11 et seq., Code 1975? We answer in the negative.
In amending the statute that had been construed to allow co-employee suits, the legislature expressed its intent in the following language:
“§ 25-5-14. Legislative findings and intent as to actions filed by injured employee against officers, etc., of same employer.
“The Legislature finds that actions filed on behalf of injured employees against officers, directors, agents, servants or employees of the same employer seeking to recover damages in excess of amounts received or receivable from the employer under the workers’ compensation statutes of this state and predicated upon claimed negligent or wanton conduct resulting in injuries arising out of and in the course of employment are contrary to the intent of the Legislature in adopting a comprehensive worker’s compensation scheme and are producing a debilitating and adverse effect upon efforts to retain existing, and to attract new industry to this state. Specifically, the existence of such causes of action places this state at a serious disadvantage in comparison to the existing laws of other states with whom this state competes in seeking to attract and retain industrial operations which would provide better job opportunities and increased employment for people in this state. The existence of such causes of action, and the consequent litigation resulting therefrom, [result] in substantial cost and expenses to employers, which as a practical matter, must either procure additional liability insurance coverage for supervisory and management employees or fund the costs of defense, judgment or settlement from their own resources in order to retain competent and reliable personnel. The existence of such causes of action has a disruptive effect upon the relationship among employees and supervisory and management personnel. There is a total absence of any reliable evidence that the availability of such causes of action has resulted in any reduction of the number or severity of on-the-job accidents or of any substantial improvement on providing safe working conditions and work practices. The intent of the Legislature is to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer and to workers’ compensation insurance carriers and compensation service companies of the employer or any officer, director, agent, servant or employee of such carrier or company and to labor unions and to any official or representative thereof, from civil liability for all causes of action except those based on willful conduct and such immunity is an essential aspect of the workers’ compensation scheme. The Legislature hereby expressly reaffirms its intent as set forth in § 25-5-53, as amended herein, and *32 sections 25-5-144 and 25-5-194 regarding the exclusivity of the rights and remedies of an injured employee, except as provided for herein. (Acts 1984, 2nd Ex. Sess., No 85-41, p. 44 § 1).”
Section 25-5-11 requires a plaintiff, seeking to recover against a co-employee, to allege and prove “willful conduct,” which is defined at § 25-5-ll(c), as follows:
“(c) As used herein, ‘willful conduct’ means:
“(1) A purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he is guilty of ‘willful conduct.’ ”
Since this legislation was passed, this Court on two occasions has stated the plaintiff’s burden in bringing a suit against a co-employee. In Reed v. Brunson, 527 So.2d 102 (Ala.1988), the Court distinguished between “wanton” and “willful” conduct:
“The plaintiff need not show that the co-employee defendant specifically intended to injure the person who was injured. What must be shown, however, is that the co-employee defendant set out purposefully intentionally, or by design to injure someone, and that his actions in furtherance of that purpose, intent or design, resulted in, or proximately caused, the injury or death upon which suit was brought. In defining ‘willful conduct’ in these terms, the Legislature recognized the clear distinction that has developed in Alabama between ‘wanton conduct’ and ‘willful conduct’:
“ ‘ “Wantonness” is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.
“ ‘ “Wilfulness” is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.
“ ‘Therefore, in “wanton conduct” and “wanton injury” a purpose or intent or design to injure is not an ingredient; and where a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet, with reckless indifference or disregard of the natural or probable consequences, but without having an intent or design to injure, he does the act, or fails to act, he would be guilty of wantonness, but not of wilfulness.
“ ‘But, in “willful conduct” and “willful injury” a purpose or intent or design to injure is an ingredient; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he is guilty of wilfulness.’ ”
527 So.2d at 119-120.
In Reed v. Brunson, we also stated:
“In § 25-5-24 the Legislature expressed concern over the rising costs of litigation among co-employees, as well as the disruptive effect that such litigation can have on workers. That concern indicates to us that the Legislature intended for an injured plaintiff to prove more than simply that he was compelled to work under circumstances that posed a foreseeable risk of harm to him or others (or circumstances from which harm could likely or even probably result), in order to maintain his action based on the ‘willfulness’ of a co-employee defendant. To the contrary, we believe the Legislature sought to insure that these kinds of cases would not be submitted to a jury without at least some evidence tending to show either 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his action. (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death short of substantial certainty that injury *33 or death would occur.) We think it safe to say that negligent, or even wanton, conduct is much more prevalent in the work place than conduct actually intended to cause injury or death. We think the Legislature has recognized this also, and in so doing, has placed upon an injured worker a heavier burden in proving a purpose, intent, or design to injure on the part of a co-worker. This comports with the manifest intent of the Legislature that litigation among co-employees be restricted to those situations in which the plaintiff can show something more than what is usually sufficient to make out a case of negligence or wantonness.”
527 So.2d at 120.
The complaint in this case does not charge the defendants with- willful conduct with intent to injure, and the record does not establish any evidence in support of a claim for willful conduct intending to injure. In Turnbow v. Kustom Kreation Vans, 535 So.2d 132 (Ala.1988), we said:
“Intent, although incapable of direct proof, can be deduced from the facts of a case and is normally a matter peculiarly within the province of the trier of facts. Walker v. Woodall, 288 Ala. 510, 513, 262 So.2d 756 (1972). However, we held in Reed [v. Brunson, 527 So.2d 102,] that, in order for the issue of intent to go to the jury in cases such as these, the plaintiff must present ‘at least some evidence tending to show either (1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or (2) that a reasonable man in the position of the defendant would have known that a particular result (i.einjury or death) was substantially certain to follow from his actions.’ Reed, 527 So.2d at 120. As to the second alternative, evidence showing only a risk of injury (short of substantial certainty that it will occur) will not entitle the plaintiff to a jury determination of whether the co-employee defendant acted with a purpose, intent or design to injure another. Id.”
535 So.2d at 134.
Neither the complaint nor the evidence offered in opposition to the motions for summary judgment meets the burden that the statute places on the plaintiff.
Accordingly, the judgment of the trial court, both as to Rosita Sanford’s claim and as to her husband’s derivative claim, is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.