Linda M. Lee sued Dean Adams and Longhorn Steaks of Alabama, Inc., alleging, among other things, that Adams, a co-employee of hers, had willfully and intentionally injured her while they were both acting within the line and scope of their employment *Page 674 
with Longhorn Steaks.[1] She amended her complaint to allege that under the "dual capacity doctrine," Adams was personally liable "for intentional acts taken outside the reasonable scope of his particular job function" and that Adams had invaded her privacy "by physically assaulting her while she was engaged in her duties on the premises of Longhorn Steaks." She also sued Longhorn Steaks for workers' compensation benefits. Pursuant to Rule 42(b), A.R.Civ.P., all claims for workers' compensation benefits were severed and are pending in the trial court.[2] The trial court entered summary judgments for Adams and Longhorn.
We note at the outset that Lee has set out no facts or issues, and has made no argument with regard to the propriety of the summary judgment for Longhorn Steaks. See Rule 28, A.R.App.P. Therefore, there is nothing for us to review as to that summary judgment.
The material facts are without dispute. Lee and Adams were employed by Longhorn Steaks at its restaurant in Hoover, Alabama. Adams was a manager and director of marketing; Lee worked at various times as a bookkeeper and hostess. Her injuries arose out of and in the course of her employment with Longhorn, and she has a claim for workers' compensation pending in the trial court. Lee and Adams had a cordial relationship and before the alleged incident that led to this action, Lee had not had any disagreement with Adams. At the time of the alleged incident, Lee was serving as hostess and was standing at the front of the restaurant with two waitresses. Adams knew that Lee had previously sustained an on-the-job injury to her arm. He came out of the kitchen, appearing to be in a playful mood. He put her in what she called a "headlock" or "choke hold," but which he called a "hug," put his right hand on the right side of her head, and dragged her through the restaurant. A fellow employee who witnessed the incident became alarmed when she observed what was going on and told Adams, "Don't do that to [Lee], you're going to hurt her." As a result of Adams's dragging Lee through the restaurant, Lee sustained an injury to her back.
When questioned about the incident, Lee testified, in part, as follows:
 "Q. What happened was — whatever happened, it was horseplay that got out of hand, in your opinion, right?
"A. Yes.
 "Q. It led to a very unexpected result, didn't it?
"A. Yes.
 "Q. But be that as it may, insensitive or not, you're not saying that [Adams] set out to cause you grievous bodily harm, are you?
 "A. No. I don't believe that he meant to hurt me."
(Emphasis added.) Furthermore, when Lee's attorney questioned Adams, the following colloquy occurred:
"Q. Do you deny hurting her?
"A. I don't deny hugging her.
". . . .
 "Q. Look, you've heard her say that she doesn't believe you intended to hurt her.
"A. Right.
"Q. And I don't think you intended to hurt her.
"A. Huh-uh."
(Emphasis added.)
Alabama law "prohibits co-employee suits based upon negligence or wantonness and permits only suits founded upon 'willful conduct' (as that conduct is defined in [Ala. Code 1975,] § 25-5-11)." Hutchins v. Huntley, 595 So.2d 886, 888
(Ala. 1992); Reed v. Brunson, 527 So.2d 102 (Ala. 1988); Sanfordv. Brasher, 549 So.2d 29 (Ala. 1989). To constitute "willful conduct," there must be knowledge of existing conditions, accompanied with a purpose or intent or design to *Page 675 
inflict injury. Ala. Code 1975, § 25-5-11(c)(1). In order to submit a case to a jury under § 25-5-11(c)(1), Lee had to present evidence tending to show "either 1) the reason why [Adams] would want to intentionally injure [her], or someone else, or 2) that a reasonable man in [Adams's] position . . . would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions."Reed v. Brunson, supra, at 120. (Emphasis original.) Evidence showing only knowledge and appreciation of the risk of injury or death, short of a substantial certainty that injury or death would occur, is insufficient for the purpose of showing willful conduct under § 25-5-11(c)(1). Id.
Although the evidence tended to show that Adams acted negligently, or perhaps even wantonly, toward Lee, it failed to show the existence of a state of mind on the part of Adams above that required to establish negligence or wantonness — it failed to show that Adams set out purposely, intentionally, or by design to injure anyone. Furthermore, the evidence failed to establish that it was substantially certain that the "horseplay" would cause her injury. Even though Adams may have perceived a risk of injury to Lee, such a perception would be insufficient for a jury to infer that he acted with a purpose to injure Lee. Id. In other words, the evidence failed to establish willfulness.
Lee also attempts to show "willful conduct" on the part of Adams by presenting evidence that he violated a workplace rule against "horseplay." Violation of a workplace rule constitutes "willful conduct" only where there is a willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee. Ala. Code 1975, § 25-5-11(c)(4). None of these elements is present in this case.
We note Lee's attempt to rely on the dual capacity doctrine to subject Adams to "personal liability for intentional acts taken outside the scope of employment or outside the reasonable scope of his job functions."
While the dual capacity doctrine is recognized in Alabama, this Court has " 'never been presented with a factual situation in which the doctrine could be applied,' " Ritchie v.Bridgestone/Firestone, Inc., 621 So.2d 288, 290 (Ala. 1993) (a case in which the doctrine was invoked in an employer/manufacturer-employee situation) (quoting Bowen v.Goodyear Tire Rubber Co., 516 So.2d 570, 571 (Ala. 1987)); and Lee has not cited any cases where there has been an attempt to invoke the doctrine against a fellow employee. But see, e.g.,Romo v. Allin Express Service, Inc., 106 Ill. App.3d 363, 62 Ill.Dec. 438, 436 N.E.2d 20 (1982) (although the plaintiff did not contend on appeal that the case was improperly dismissed as to individual defendants, and thus waived that issue, the court nonetheless held that "the action was properly dismissed as to the individual defendants, because it was based on the dual-capacity doctrine which is not applicable to co-employees").
Professor Larson describes the dual capacity doctrine:
 "An employer may become a third person, vulnerable to tort suit by an employee if — and only if — he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person."
(Emphasis added.) 2A Larson, The Law of Workmen's Compensation, § 72.81 (1990).
Even if the law recognized the applicability of the dual capacity doctrine in regard to co-employees, an employee's engaging in horseplay, which is common in the workplace, does not make that employee "possess a second persona so completely independent from and unrelated to his status as [co-employee] that by established standards the law recognizes it as a separate legal person." As long as horseplay, practical jokes, and such things do not rise to the level of willfulness, as defined in Reed v. Brunson, supra, then the immunity provisions of the workers' compensation law apply.
We also note that Lee's invasion of privacy claim is yet another attempt to limit the immunity afforded Adams by §25-5-11(c). The tort of invasion of privacy is the wrongful intrusion, physically or otherwise, upon the solitude or seclusion of another or into one's private activities in such a manner *Page 676 
as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. See Phillips v. SmalleyMaintenance Services, Inc., 435 So.2d 705 (Ala. 1983). Adams's engaging in "horseplay," without more, plainly falls short of the intrusion upon the solitude or seclusion of another or into one's activities that would constitute an invasion of privacy.
For the foregoing reasons, we conclude that the trial court properly entered the summary judgments for Adams and Longhorn Steaks.
AFFIRMED.
INGRAM and BUTTS, JJ., concur.
HORNSBY, C.J., and ALMON, J., concur in the result.
[1] Lee also sued Scott Miller, an operations manager for Longhorn Steaks. The trial court entered a summary judgment for Miller, from which Lee did not appeal.
[2] There is no dispute that Longhorn Steaks is subject to the Workers' Compensation Act, and there is no dispute that Lee's injuries occurred during the performance of her employment duties. The dispute is the degree and extent, if any, of Lee's disability. *Page 886