**Dr. Richard DUKE and Hartford Accident and Indemnity Company, Appellants,**

v.

**Mary Sue McAnally WILSON, Appellee.**

No. 08–94–00043–CV.

Court of Appeals of Texas, El Paso.

May 18, 1995.

Rehearing Overruled June 14, 1995.

Jack Q. Tidwell, Denis Dennis, McMahon, Tidwell, Hansen, Atkins & Peacock, P.C., Odessa, Linda F. Jenkins, Dallas, for appellants.

Jimmy Edwards, Odessa, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

CHEW, Justice.

This is a medical negligence suit. Dr. Richard Duke appeals a judgment against himself and a government-owned hospital based upon a jury verdict in favor of Mary Sue Wilson. The jury found Dr. Duke and Medical Center Hospital negligent in operating on Wilson's left knee when the surgery was intended to correct a work-related injury to her right knee. Hartford appeals the trial court's denial of its Plea in Intervention to recover the workers' compensation benefits it had paid to Wilson. The appeal issues are limited to: (1) the apportionment of liability between a private codefendant and a governmental codefendant; (2) the award of prejudgment interest on future damages; and (3) the denial of Hartford's plea of intervention. We affirm as to Dr. Duke and reverse and remand as to Hartford.

Wilson injured her right knee while working as a school bus driver. She was treated by Dr. Duke, who admitted her to the Medical Center Hospital for surgery on her injured knee. Unfortunately, Dr. Duke and the surgical team operated on the wrong knee, her left knee, and complications resulted in loss of her left knee cap. Apparently, subsequent surgery on the right knee was successful. Hartford, the worker's compensation carrier for Wilson's employer, paid Wilson compensation and medical benefits for both surgeries.

The jury awarded Wilson total joint and several damages of $761,841.70, including prejudgment interest for past damages, finding Dr. Duke sixty percent (60%) liable and the Hospital forty percent (40%) liable. The trial court entered judgment assessing joint and several liability against Dr. Duke and the Hospital; limited the Hospital's damages to $100,000; and assessed the balance of damages, $804,441.48, including prejudgment interest for past *and* future damages, against Dr. Duke. The trial court denied Hartford's Plea in Intervention.

### Dr. Duke's Appeal

Dr. Duke's first contention is that he can not be jointly and severally liable for that portion of damages attributable to, but in excess of his governmental codefendant's tort claim limit of liability. Dr. Duke's stated point of error is predicated on the assertion that he is deprived of any "right of contribution" action against the Hospital, whose limited tort claim liability of $100,000 to Wilson has been used up. TEX.CIV.PRAC. & REM. CODE ANN. § 33.015 (Vernon Supp.1995). We first observe that whatever right of contribution a liable defendant may have, if any, it is only against a jointly and severally liable codefendant, and does not diminish the liability to the claimant. However, Dr. Duke's argument is far more subtle and far reaching; he argues that he can only be jointly and severally liable for the liability of his codefendant and, since his codefendant is only liable for $100,000, then he can only be jointly and severally liable for that amount.

Dr. Duke relies principally on *Tarrant County Water Control and Improvement District No. 1 v. Crossland,* 781 S.W.2d 427 (Tex.App.—Fort Worth 1989, writ denied), which extends the comparative responsibility formula in tort claim actions developed by this Court in *University of Texas at El Paso v. Nava,* 701 S.W.2d 71, 72 (Tex.App.—El Paso 1985, no writ). *Nava* considered the apportionment of comparative responsibility

between an individual plaintiff and a single governmental defendant, where both were found to share equal responsibility for the damages. The governmental defendant argued that since its maximum tort claim liability was $100,000, that should be the amount multiplied by the percentage of its comparative responsibility rather than the larger total damages. This Court disagreed and Justice Ward stated that: "[t]here is no support in the Texas Tort Claims Act for [the] contention that a different application of the comparative negligence statute is called for in actions brought pursuant to the tort claims act." *Id.* at 72. This Court found that the proper formula to be applied against a responsible governmental defendant is damages times the percentage of comparative responsibility, and then, the product is limited or capped by the tort claim act limitation. *Id.*

*Crossland* considered application of comparative responsibility and tort claim act limitations as between two governmental codefendants: a Water District and the State of Texas. There the jury found the Water District twenty percent (20%) responsible and the State seventy-five percent (75%) responsible for approximately $400,000 of damages. When the percentage of responsibility was multiplied by the total award, comparative liability was approximately $80,000 against the Water District and $300,000 against the State. The trial court assessed each governmental codefendant the maximum of their respective tort claim limits or $100,000 each. *Crossland,* 781 S.W.2d at 438. See TEX.CIV. PRAC. & REM.CODE ANN. § 101.023 (Vernon 1986 and Supp.1995). The Fort Worth Court of Appeals disagreed and held that the Water District's liability could not be increased from $80,000 to their tort claim act limit of $100,000 as their joint and several liability. The Court reasoned that since the "purpose of the Texas Tort Claims Act is to provide a limited waiver of the State's governmental immunity," they did not "believe the legislature intended to limit the State's liability by transferring any liability in excess of $100,-000 to another party." *Crossland,* 781 S.W.2d at 438. The court stated that governmental defendants do have joint and several liability, but it only applies to the sum of

their respective liabilities rather than the total damages of the claimant. That dicta, it seems to us, essentially negates joint and several liability of a responsible governmental defendant.

We would decline to follow such an application, and moreover, this case is clearly distinguishable from *Crossland.* We have here one governmental codefendant, the Hospital, responsible for damages which exceed the statutory limitation, and a responsible individual codefendant, Dr. Duke, who, in addition to his own comparative liability, is being assessed joint and several liability for those damages assigned to the Hospital but which exceed the tort claim act limitation. While we understand and may even appreciate Dr. Duke's argument, we are more mindful of the fundamental policy of tort law and the purpose behind joint and several liability to fully compensate those who have been injured by negligent acts. We do not see how this result is any different than the result obtained when one defendant is saddled with an insolvent codefendant. See e.g., *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984). Accordingly, we find that Wilson is not precluded from recovering from Dr. Duke that portion of the damage award which is not recoverable from the Hospital and for which Dr. Duke is jointly and severally liable. Point of Error One is overruled.

■ In his second point of error, Dr. Duke contends that the trial court erred in awarding prejudgment interest on future damages upon a retroactive application of the Texas Supreme Court's decision and interpretation of TEX.REV.CIV.STAT.ANN. art. 5069–1.05(6)(a) (Vernon Supp.1995) in *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 324 (Tex. 1994). Article 5069–1.05, § 6(a) provides that: "[j]udgments in wrongful death, personal injury, and property damages cases must include prejudgment interest."

Dr. Duke's argument is that when this case was submitted to the jury, there was a conflict among the various appellate courts on the issue of whether recovery of prejudgment interest on future damages was proper, and that it would be unfair to retroactively

apply the Supreme Court's decision in *C & H*, which expressly held that the award of prejudgment interest on future damages is mandated by the statute.

Dr. Duke is on the wrong side of his own argument. The statute was effective as of September 2, 1987. This Court, on August 25, 1993, held that prejudgment interest accrues on the entire judgment, including the award for future damages. *Gem Homes, Inc. v. Contreras*, 861 S.W.2d 449, 460 (Tex. App.—El Paso 1993, writ denied). In doing so, we joined six of our sister courts in holding that prejudgment interest accrued on the entire judgment, including future damages. See *Wal–Mart Stores, Inc. v. Berry*, 833 S.W.2d 587, 596–97 (Tex.App.—Texarkana 1992, writ denied); *Hughes v. Thrash*, 832 S.W.2d 779, 787 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Sisters of Charity of the Incarnate Word v. Dunsmoor*, 832 S.W.2d 112, 117 (Tex.App.—Austin 1992, writ denied); *C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259, 276 (Tex.App.—Houston [1st Dist.] 1991), aff'd in part and rev'd in part, 903 S.W.2d 315 (Tex.1994); *C.T.W. v. B.C.G.*, 809 S.W.2d 788, 795 (Tex.App.—Beaumont 1991, no writ); *Ellis County State Bank v. Keever*, 870 S.W.2d 63 (Tex.App.—Dallas 1992), aff'd, 888 S.W.2d 790 (Tex. 1994). Only one court held to the contrary. *Missouri Pacific Railroad Company v. Lemon*, 861 S.W.2d 501, 529 (Tex.App.—Houston [14th Dist.] 1993, writ granted).

*C & H*, at least as to this case and in this Court's jurisdiction, does not have retroactive or retrospective application. *Gem Homes*, 861 S.W.2d at 460. We therefore find that there was no retroactive application of Article 5069–1.05(6) and that assessment of prejudgment interest on all damages, including future damages was proper. Point of Error Two is overruled.

### Hartford's Appeal

■ In its sole point of error, Hartford contends that the trial court erred in denying its Plea in Intervention asserting its workers' compensation subrogation claim in Wilson's third party action. Wilson takes the position that the trial court correctly denied Hartford's Plea in Intervention because it failed to prove that the left knee negligence suit was a compensable injury under the Texas Workers' Compensation Act and that therefore no right of subrogation arose.

■ Texas Rules of Civil Procedure provide that: "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.R.Civ.P. 60. A party seeking to intervene must show that he could maintain the suit in his own right. *McCord v. Watts*, 777 S.W.2d 809, 812 (Tex. App.—Austin 1989, no writ). The interest asserted by the intervenor may be legal or equitable. *Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982, writ ref'd n.r.e); *Inter–Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.). The trial court has broad discretion in determining whether an intervention should be stricken. *Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). However, it is an abuse of discretion to strike a plea in intervention if: (1) the intervenor has met the above requirement of ability to bring suit in his own right; (2) intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Id.*; *Moody*, 411 S.W.2d at 589; *Daon Corp.*, 641 S.W.2d at 337.

Article 8308–4.05 of the Texas Workers' Compensation Act provides that:

(a) If a third party is or becomes liable to pay damages for an injury or death which is compensable under this Act, the employee or legal beneficiary may seek damages from the third party....

(b) If compensation is claimed under this Act by the injured employee or the employee's legal beneficiaries, the insurance carrier is subrogated to the rights of the injured employee and may enforce in the name of the injured employee or the legal beneficiaries the liability of that other person.

. . . . .

(f) If at the conclusion of a third party action, a worker' compensation claimant is entitled to compensation, the net amount recovered by the claimant from the third party action shall be applied to reimburse the insurance carrier for past benefits and medical expenses paid.

TEX.REV.CIV.STAT.ANN. art. 8308–4.05(a), (b), and (f) (Vernon Pamphlet). The threshold issue then becomes what is a compensable injury. The Act defines a compensable injury as: "an injury that arises out of and in the course and scope of employment for which compensation is payable under this Act." TEX.REV.CIV.STAT.ANN. art. 8308–1.03(10). Case law has expanded upon this definition to include what has been labeled an "extension injury" or an injury occurring in the probable sequence of events and arising from the actual compensable injury.

It is settled law that where disability or death results from medical treatment instituted to cure or relieve an employee from the effects of his injury, it is regarded as having been proximately caused by the injury and is compensable under a claim for workers compensation. *Texas Emp. Ins. Ass'n v. Eskue*, 574 S.W.2d 814, 818 (Tex.Civ.App.—El Paso 1978, no writ); *Western Casualty & Surety Co. v. Gonzales*, 506 S.W.2d 303, 309 (Tex. Civ.App.—Corpus Christi 1974), affm'd, 518 S.W.2d 524 (Tex.1975); *Liberty Mutual Insurance Company v. Pool*, 449 S.W.2d 121 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.); *McAdams v. Fidelity and Casualty Co. of New York*, 406 S.W.2d 518 (Tex.Civ. App.—Houston 1966, writ ref'd n.r.e.); 62 TEX.JUR.2d Workmen's Compensation § 68 (1965), and cases cited therein. The aggravation is regarded as a probable sequence and natural result likely to flow from the injury. *Eskue*, 574 S.W.2d at 818; *Gonzales*, 506 S.W.2d at 309.

■ The facts of this case are substantially similar to the facts presented in *Eskue* where this Court found that injury to the claimant's arm from use of crutches necessitated by a compensable injury to his leg constituted an extension of the injury to the leg and was therefore a compensable injury as that term is defined by the Texas Workers' Compensation Act. *Eskue*, 574 S.W.2d

at 818. Relying upon *Eskue*, it is indisputable that if Wilson had only sought to recover under workers' compensation, Hartford would be liable to Wilson for the injury to Wilson's *left* knee that resulted from the required surgery on her *right* knee. Consequently, Hartford was entitled, pursuant to Article 8308–4.05, to pursue this claim in Wilson's name, even had Wilson chosen not to pursue it. Accordingly, we find that Hartford has met the threshold requirement of proving its ability to bring this suit in its own right. Similarly, we find, in light of the issues involved and the ease of proving up the amount of benefits paid out, that Hartford's intervention would not complicate the case by an excessive multiplication of the issues. Intervention is necessary as it prevents the payment of the judgment in full to Wilson prior to Hartford's recoupment of its subrogation interest. Furthermore, denial of the Plea in Intervention only results in a multiplicity of lawsuits over issues previously adjudicated. Upon these facts we hold that the trial court's denial of Hartford's Plea in Intervention was an abuse of discretion. We therefore reverse the judgment of the trial court and remand the case for judgment in favor of Hartford on its subrogation claim and determination of attorney's fees in relation to the subrogation claim, and affirm the trial court's judgment as to Dr. Duke.