Janis Ann PAYNE, Petitioner,

v.

GALEN HOSPITAL CORPORATION
d/b/a Clear Lake Medical Center,
Respondent.

No. 99–1011.

Supreme Court of Texas.

Decided Aug. 24, 2000.

Argued March 22, 2000.

Paul F. Waldner, Vickery & Waldner, Houston, Mike Morris, Tekell Book Matthews & Limmer, Houston, for petitioner.

William A. Sherwood, Richard A. Sheehy, McFall Sherwood & Sheehy, Houston, for respondent.

Justice O'NEILL delivered the opinion of the Court.

Petitioner injured her back while working as a hospital nurse and had a prescription filled to treat her injury at the hospital pharmacy, which provides medication only to hospital patients and employees who suffer on-the-job injuries. Petitioner suffered a severe and permanently disabling reaction to the medication, and she sued the hospital for negligence and gross negligence in filling her prescription. The parties agree that the full range of petitioner's injuries are compensable under the Texas Workers' Compensation Act, and that she has received and continues to receive full compensation benefits. We must decide whether petitioner is barred by the Act's exclusive-remedy provision from bringing common-law claims against the hospital based upon the pharmacy's alleged negligence. We hold that petitioner's reaction to the medication is a work-related injury for purposes of the exclusive-remedy provision and affirm the court of appeals' judgment.

## I

### Background

Janis Payne was employed as a registered nurse by Galen Hospital when she injured her back. Dr. Green, a physician not associated with the hospital, treated Payne and diagnosed her as having a lumbar strain. When her back pain began to interfere with her ability to work, Green prescribed Toradol, a non-steroidal anti-inflammatory drug that had been on the market for less than five months. The drug's package insert warned that it was not to be used for chronic pain and was only to be used for "a limited duration."

Payne filled her prescription for Toradol at the hospital pharmacy. The pharmacy is not open to the public, nor is it available to hospital employees in general; it dispenses drugs only to hospital patients and employees requiring medication for on-the-job injuries. As an employee injured on the job, Payne received her medication free of charge.

Payne took Toradol for four and one-half months. Because of this prolonged use,

she suffered a severe reaction. She developed vasculitis, breathing problems, cataracts, peripheral-nerve damage, joint damage, and severe depression. She is totally and permanently disabled and will be confined to a wheelchair for the rest of her life.

Payne has received and continues to receive workers' compensation benefits for her back injury and for her Toradol reaction. All of her medical treatments for her back injury and for her Toradol reaction have been paid for by the hospital's workers' compensation carrier. She has also received payments for lost wages since she injured her back. As of September 1996, $534,802 had been paid to Payne's health-care providers and $87,783 had been paid directly to Payne.

Payne sued the hospital, Dr. Green, and Toradol's manufacturer, alleging that their negligence and gross negligence caused her Toradol reaction. The hospital's workers' compensation carrier intervened to recover payments made under the workers' compensation policy. The hospital moved for summary judgment, arguing that the Workers' Compensation Act's exclusive-remedy provision bars Payne's suit and, alternatively, that by accepting workers' compensation benefits Payne is estopped from proceeding with her common-law claims against the hospital. The trial court granted the hospital summary judgment and dismissed the workers' compensation carrier's claims against the hospital. The trial court then severed the claims against the hospital, leaving only the claims against Dr. Green and the drug manufacturer, which settled.

Payne appealed the summary judgment. The court of appeals originally reversed the summary judgment, but on rehearing withdrew its original opinion and affirmed the trial court's decision. *See* 4 S.W.3d 312, 313. The court of appeals, with one justice dissenting, held that Payne's Toradol reaction is a work-related injury and that therefore the Workers' Compensation Act's exclusive-remedy provision bars her common-law claims against the hospital. *See id.* at 317.

Payne petitioned this Court for review. She argues that the Workers' Compensation Act's exclusive-remedy provision does not bar her common-law claims against the hospital because her Toradol reaction is not work-related and did not result from her employer-employee relationship with the hospital. She further argues that the election-of-remedies doctrine does not bar her common-law claims because the hospital produced no summary judgment evidence that she exercised an informed choice between her possible remedies.

We hold that Payne's reaction to Toradol is a work-related injury subject to the Act's exclusive-remedy bar, and that she may not avoid that bar by claiming that the hospital was not acting as her employer when it filled her prescription. Accordingly, the hospital was entitled to summary judgment. Because we hold that workers' compensation benefits are Payne's only remedy against the hospital for her Toradol reaction, we need not consider whether the election-of-remedies doctrine bars her common-law claims.

## II

### Exclusive–Remedy Provision

A primary purpose of the Workers' Compensation Act is to relieve employees injured on the job of the burden of proving their employer's negligence and to provide them prompt remuneration for their on-the-job injuries. *See Paradissis v. Royal Indem. Co.*, 507 S.W.2d 526, 529 (Tex. 1974). Because of this purpose, we have liberally construed the Act in the employee's favor. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999); *Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d 295, 297 (Tex.1988). Under the Act, only injuries occurring "in the course and scope of employment" are compensable. Tex. Rev.Civ. Stat. art. 8308–1.03(10) (repealed) (current version at Tex. Lab.Code

§ 401.011(10)).[1] The Act defines "course and scope of employment" as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by the employee while engaged in or about the furtherance of the affairs or business of the employer." TEX. REV.CIV. STAT. art. 8308–1.03(12) (repealed) (current version at TEX. LAB.CODE § 401.011(12)).

To fully effectuate the Act's purpose to provide prompt and certain remuneration to injured employees, "course and scope" has been interpreted expansively to include additional injuries that result from treating on-the-job injuries. *See Western Cas. & Sur. Co. v. Gonzales*, 518 S.W.2d 524, 526 (Tex.1975); *see also Duke v. Wilson*, 900 S.W.2d 881, 886 (Tex.App.—El Paso 1995, writ denied). When considering the extent of a compensable injury, "[t]he full consequences of the original injury, together with the effects of its treatment, upon the general health and body of the workman are to be considered." *Western Cas. & Sur. Co.*, 518 S.W.2d at 526. Thus, if an additional injury occurs "in the probable sequence of events and aris[es] from the actual compensable injury," it is deemed to have occurred in the course and scope of employment for compensation purposes. *Duke*, 900 S.W.2d at 886. For example, in *Western Casualty*, the employee injured his finger at work. He became permanently disabled because of pain medication administered to treat his injury. *See* 518 S.W.2d at 525. We held that he was entitled to compensation for total disability. *See id.* at 528. Similarly, in *Duke*, the employee injured her right knee at work. *See* 900 S.W.2d at 883. Her doctor operated on the wrong knee, and complications resulted in the loss of her left knee cap. *See id.* The court concluded that the loss of her left knee cap was a compensable injury. *See id.* at 886.

Drugs prescribed for on-the-job injuries are considered part of an employee's treatment under the Act.[2] *See* TEX. REV.CIV. STAT. arts. 8308–1.03(20)(E), 8308–4.69 (repealed) (current versions at TEX. LAB.CODE §§ 401.011(19)(E), 408.028). In her deposition, Payne testified that when she returned to work after her injury her back was easily irritated, and this interfered with her ability to do her job. Dr. Green prescribed Toradol to treat her back pain, and she filled this prescription at the hospital pharmacy. Payne suffered a severe reaction to the Toradol after taking it for four and one-half months. Clearly, Payne's Toradol reaction resulted from treating her on-the-job back injury; therefore, her injury arose in the course and scope of her employment for compensation purposes.

Payne concedes that her reaction to Toradol is a compensable injury under the Act, and that she has been receiving workers' compensation benefits for her Toradol reaction since February 1993. Necessarily, then, Payne agrees that, at least for compensation purposes, her Toradol reaction arose in the course and scope of her employment. But Payne argues that her Toradol reaction was an independent injury that did not occur in the course and scope of her employment for purposes of the exclusive-remedy provision, which applies only to "work-related injur[ies]." The hospital, on the other hand, contends,

1. We cite to the version of the Workers' Compensation Act in effect when Payne sustained her original injury. *See* Texas Workers' Compensation Act, 71st Leg., 2d C.S., ch. 1, 1989 Tex. Gen. Laws 1, *repealed by* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 5(2), 1993 Tex. Gen. Laws 987, 1273.

2. Payne argues that the hospital's pharmacy was not treating her when it filled her prescription for Toradol, as only a medical doctor can provide treatment. Under the Act, however, drugs prescribed for on-the-job injuries are considered part of an employee's treatment. *See* TEX.REV.CIV. STAT. arts. 8308–1.03(20)(E), 8308–4.69 (repealed) (current versions at TEX. LAB.CODE §§ 401.011(19)(E), 408.028).

and the court of appeals agreed, that "compensability" and "exclusivity" are coextensive, and that the recovery of benefits under the Act is the exclusive remedy against a covered employer for a compensable injury.

We have never decided whether an injury arising in the course and scope of employment for compensation purposes is necessarily "work-related" for exclusivity purposes. *See* TEX.REV.CIV. STAT. art. 8308–4.01(a) (repealed) (current version at TEX. LAB.CODE § 408.001(a)). The Act does not define "work-related injury," and this Court has not construed the term. Courts seem to use the terms "course and scope of employment" and "work-related" interchangeably. This Court has used the term "work-related" when discussing compensable injuries, even though the Act defines a compensable injury as one that arises "in the course and scope of employment." *See Albertson's,* 984 S.W.2d at 959 ("Sinclair filed a compensation claim . . . for an alleged work-related injury."); *Lewis v. Lewis,* 944 S.W.2d 630, 630 (Tex.1997) ("Lewis suffered a work-related injury . . . for which he claimed compensation."). And other courts have referred to injuries arising "in the course and scope of employment" when discussing the exclusive-remedy provision, even though that provision refers to "work-related" injuries. *See Hoffman v. Trinity Indus., Inc.,* 979 S.W.2d 88, 89 (Tex.App.—Beaumont 1998, pet. dism'd by agr.) ("The Texas Workers' Compensation Act is the exclusive remedy for an employee injured in the course and scope of his employment."); *Dickson v. Silva,* 880 S.W.2d 785, 788 (Tex. App.—Houston [1 st Dist.] 1993, writ denied) ("The [A]ct provides the exclusive remedy for injuries employees sustain in the course of their employment.").

Whether or not "compensability" and "exclusivity" are always and for all purposes coextensive, which we do not decide, we hold that they are coextensive here. If Payne's Toradol reaction, which arose out of the treatment of her on-the-job injury, is deemed to have occurred during the course and scope of her employment for compensation purposes, we see no reason why it should not also be deemed work-related for exclusivity purposes. After all, in exchange for affording employees prompt and certain recovery for on-the-job injuries, the Workers' Compensation Act shields employers from common-law liability for those injuries. *See Paradissis,* 507 S.W.2d at 529.

Payne argues that we should not consider her Toradol reaction work-related for exclusivity purposes because (1) she was not in the course and scope of her employment when she obtained Toradol from the hospital pharmacy, and (2) she stood in a consumer-retailer, rather than an employer-employee, relationship with the hospital when she obtained the Toradol. We consider these arguments in turn.

■ Payne claims that she was not in the course and scope of her employment when she obtained Toradol from the hospital pharmacy because she filled her prescription after work and on her days off, she never took Toradol while working, and she could have chosen to fill her prescription at any pharmacy. Payne relies upon *Ruiz v. Chase Manhattan Bank,* 158 Misc.2d 948, 607 N.Y.S.2d 207, 208 (N.Y.App. Term 1993), *aff'd,* 211 A.D.2d 539, 621 N.Y.S.2d 345 (N.Y.App.Div.1995), to support her argument. In *Ruiz,* an employee was injured when a pharmacy operated by Chase improperly filled her prescription. *See Ruiz,* 607 N.Y.S.2d at 208. The court held that the exclusivity provision of the workers' compensation law did not bar the employee's claim because there was no nexus between the injury and the employment. *See id.* In so holding, the court pointed out that the prescription was for a non-work-related injury. *See id.* The court also emphasized that the pharmacy was open to both Chase employees and non-Chase employees who worked in the same office building, without special discounts or privileges for Chase employees. *See id.* Here, Payne filled a pre-

scription, without charge, for an on-the-job injury at a hospital pharmacy open only to hospital patients and employees filling prescriptions for on-the-job injuries. Thus, *Ruiz* is distinguishable and does not support Payne's position.

Texas courts have held that the aggravation of an employee's on-the-job injury is work-related for purposes of the exclusive-remedy provision. *See Darensburg v. Tobey*, 887 S.W.2d 84, 87 (Tex.App.—Dallas 1994, writ denied); *cf. Godinet v. Thomas*, 824 S.W.2d 632, 633 (Tex.App.—Houston [14th Dist.] 1991, writ denied). In *Darensburg*, an employee's on-the-job injury was aggravated after being misdiagnosed by the medical director of his employer's on-site health facility. *See* 887 S.W.2d at 85–86. The court of appeals held that the exclusive-remedy provision barred his suit for the aggravation injury. *See id.* at 90. Payne attempts to distinguish *Darensburg*, claiming that the employee there was treated at a company facility not open to the general public by a doctor authorized to treat only company employees, while the hospital pharmacy was available to any patient or employee. *See id.* at 85, 87. Moreover, Payne claims she was not required to use the hospital pharmacy and was free to fill her prescrip-

tion at any pharmacy she wished. But by providing free prescriptions to employees for on-the-job injuries, the hospital was providing an employment benefit that Payne utilized in filling her Toradol prescription at the hospital pharmacy. Thus, we cannot say that Payne was not in the course and scope of her employment when she filled her Toradol prescription.

■ Payne next argues that the exclusivity provision should not apply because she stood in a consumer-retailer, rather than an employer-employee, relationship with the hospital when she filled her prescription. Despite Payne's protestations to the contrary, her argument raises the dual-capacity doctrine.[3] Under that doctrine, an employer normally shielded from liability by the workers' compensation exclusive-remedy principle may become liable in tort to an employee if it occupies, in addition to its capacity as an employer, a second capacity that confers on it obligations independent of those imposed on it as an employer. *See* 2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 72.80. We have never decided whether an employee may use the dual-capacity doctrine to avoid the Act's exclusive-remedy provision. But even if we were inclined to recognize the doctrine,[4]

---

**3.** Payne argues that the dual-capacity doctrine has nothing to do with this case because it applies only if the employer has more than one capacity when the employee's original injury occurs. The doctrine, however, has not been so limited. *See* 2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 72.80 (1976); *see also Darensburg*, 887 S.W.2d at 88 (discussing dual capacity in the context of aggravation of original work-related injury).

**4.** We note that Texas courts of appeals have uniformly rejected the dual-capacity doctrine. *See Darensburg*, 887 S.W.2d at 88; *Holt v. Preload Tech., Inc.*, 774 S.W.2d 806, 807–08 (Tex.App.—El Paso 1989, no writ); *Davis v. Sinclair Ref. Co.*, 704 S.W.2d 413, 415 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Gore v. Amoco Prod. Co.*, 616 S.W.2d 289, 290 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Cohn v. Spinks Indus., Inc.*, 602 S.W.2d 102, 103–04 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

The majority of other jurisdictions considering the dual-capacity doctrine have rejected it as well. Most states have simply rejected the dual-capacity doctrine outright. *See State v. Purdy*, 601 P.2d 258, 260 (Alaska 1979); *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 950 P.2d 1165, 1173 (App.1997); ARK. CODE ANN. § 11–9–105 (Michie 1999) (rejecting dual capacity by statute); CAL. LAB CODE § 3602 (West 2000) (same); *Panaro v. Electrolux Corp.*, 208 Conn. 589, 545 A.2d 1086, 1091 (1988); *Ray v. District of Columbia*, 535 A.2d 868, 871 (D.C. 1987); *Warwick v. Hudson Pulp & Paper Co., Inc.*, 303 So.2d 701, 703 (Fla.Dist.Ct.App. 1974); *The Estate of John Coates v. Pacific Eng'g*, 71 Haw. 358, 791 P.2d 1257, 1260 (1990); *Dugger v. Miller Brewing Co.* 199 Ga. App. 850, 406 S.E.2d 484, 487 (1991); *Rhodes v. Sunshine Mining Co.*, 113 Idaho 162, 742 P.2d 417, 423 (1987); *Needham v. Fred's Frozen Foods, Inc.*, 171 Ind.App. 671, 359 N.E.2d 544, 545 (1977); *Borman v. Interlake, Inc.*, 623 S.W.2d 912, 912 (Ky.Ct.App. 1981); LA.REV.STAT. ANN. § 23:1032 (West

which we do not decide, it does not apply here.

The test for determining dual capacity "is not concerned with how separate or different the second function of the employer is from the first but whether the second function generates obligations unrelated to those from the first, that of employer." LARSON, *supra*, § 72.80. An employee, therefore, may sue her employer in tort only if her employer's second capacity is independent and unrelated to its status as an employer.

Here, the summary-judgment evidence establishes that the hospital only filled Payne's prescription because it was her employer. The hospital pharmacy does not dispense drugs to the general public, and except for employees who have been injured on the job, it does not dispense medications to hospital employees. The hospital pharmacy fills prescriptions for employees only if a doctor has ordered the medication to treat a work-related injury. Before filling these prescriptions, the pharmacy verifies that the employee is a workers' compensation claimant and that a doctor has ordered the prescription to treat a work-related injury. When an employee who has been injured on the job obtains medication for that injury at the hospital pharmacy, the pharmacy collects no money from the employee.

Because the hospital only filled Payne's prescription because she sustained an on-the-job injury, the hospital was acting in its capacity as an employer when it filled Payne's prescription and the dual-capacity doctrine does not apply.

## III

### Conclusion

We hold that Payne's Toradol reaction is a work-related injury subject to the Workers' Compensation Act's exclusive-remedy provision. Because the Act's exclusive-remedy provision bars Payne's common-law claims against the hospital, the hospital was entitled to summary judgment. Accordingly, we affirm the court of appeals' judgment.

2000) (rejecting dual capacity by statute); *Trotter v. Litton Sys., Inc.*, 370 So.2d 244, 247 (Miss.1979); *Burns v. Employer Health Serv.*, 976 S.W.2d 639, 645 (Mo.Ct.App.1998); *Herron v. Pack & Co.*, 217 Mont. 429, 705 P.2d 587, 589 (1985); *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391, 395 (1993); *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466, 474 (N.D.1978); *VerBouwens v. Hamm Wood Prods.*, 334 N.W.2d 874, 876 (S.D.1983); *McAlister v. Methodist Hosp. of Memphis*, 550 S.W.2d 240, 245–46 (Tenn. 1977); *Hunsaker v. State*, 870 P.2d 893, 899 (Utah 1993); *Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73, 78 (1985).

Other jurisdictions have rejected the dual-capacity doctrine and adopted the dual-persona doctrine, which requires a separate legal persona. *See Salswedel v. Enerpharm, Ltd.*, 107 N.M. 728, 764 P.2d 499, 502 (App.1988); *Evans v. Thompson*, 124 Wash.2d 435, 879 P.2d 938, 941 (1994); *Henning v. General Motors Assembly Div.*, 143 Wis.2d 1, 419 N.W.2d 551, 556 (1988).

Still other jurisdictions have rejected the dual-capacity doctrine and left the door open for the dual-persona doctrine. *See Jansen v. Harmon*, 164 N.W.2d 323, 328–30 (Iowa 1969); *Barrett v. Rodgers*, 408 Mass. 614, 562 N.E.2d 480, 483 (1990); *Egeland v. State*, 408 N.W.2d 848, 851 (Minn.1987); *Millard v. Hyplains Dressed Beef, Inc.*, 237 Neb. 907, 468 N.W.2d 124, 128 (1991); *Tatum v. Medical Univ. of South Carolina*, 335 S.C. 499, 517 S.E.2d 706, 711–12 (App.1999).

A few jurisdictions state that they accept the dual-capacity doctrine, but use the definition of dual persona to define dual capacity. *See Lee v. Longhorn Steaks of Ala., Inc.*, 662 So.2d 672, 675 (Ala.1995); *Sharp v. Gallagher*, 95 Ill.2d 322, 69 Ill.Dec. 351, 447 N.E.2d 786, 788 (1983); *Kimzey v. Interpace Corp.*, 10 Kan.App.2d 165, 694 P.2d 907, 912 (1985); *Howard v. White*, 447 Mich. 395, 523 N.W.2d 220, 221–22 (1994); *Ryan v. Hiller*, 138 N.H. 348, 639 A.2d 258, 260 (1994).

A minority of jurisdictions have adopted the dual-capacity doctrine as we have defined it. *See Wright v. District Court*, 661 P.2d 1167, 1168 (Colo.1983); *Suburban Hosp., Inc. v. Kirson*, 128 Md.App. 533, 739 A.2d 875, 883 (1999), *cert. granted*, 358 Md. 162, 747 A.2d 644 (2000); *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488, 492 (1978); *Weber v. Armco, Inc.*, 663 P.2d 1221, 1226 (Okla.1983).