Reversed and Rendered and Memorandum Opinion filed April 12, 2007









Reversed and
Rendered and Memorandum
Opinion filed April 12, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00592-CV

____________

 

ACE AMERICAN INSURANCE COMPANY, Appellant

 

V.

 

ERASMO MAREZ, Appellee

 





 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. C-2005,41629

 





 

M E M O R A N D U M   O P I N I O N

 

In this workers= compensation
case, a jury found that Erasmo Marez was not injured in the course and scope of
his employment at Trinity Industries, Inc.  The trial court, however,
granted Marez=s motion for judgment notwithstanding the verdict (AJNOV@) in Marez=s favor and
ordered Ace American Insurance Company (AAce@), Trinity
Industries= worker=s compensation
insurance carrier and the plaintiff below, to pay Marez=s attorney=s fees.  On
appeal, Ace contends the trial court erred in granting the JNOV and awarding
attorney=s fees because
more than a scintilla of evidence supports the jury=s verdict. 
In a cross-point, Marez contends that, if more than a scintilla of evidence
supports the jury=s verdict, the verdict was against the
great weight and preponderance of the evidence.  We reverse and render.

Procedural Background

Erasmo Marez claimed that, on July 7, 2004, he sustained a
compensable injury to his back in the course and scope of his employment as a
welder with Trinity Industries.  Following a benefit review conference,
the Texas Workers= Compensation Commission (ATWCC@) held a benefit
case hearing in which the hearing officer found that, on July 7, 2004, Marez
sustained an injury in the course and scope of his employment.  The
hearing officer also concluded that, as a result of the injury, Marez had a
disability from August 9, 2004, continuing to the date of the hearing, March
28, 2005.  Ace appealed this decision to a TWCC appeals panel, which
upheld the hearing officer=s decision.

In June of 2005,
Ace appealed the TWCC appeals panel=s decision to the district
court, alleging that Marez did not sustain a compensable injury on July 7,
2004, and did not have a disability from August 9, 2004, to March 28,
2005.  The case was tried to a jury, which heard testimony from Marez and
two Trinity Industries employees.  After both parties rested and the jury
heard closing arguments, the trial court submitted its charge to the
jury.  The charge included the following instruction:

You are instructed, as required by the Texas Workers= Compensation Act,
that the Texas Workers= Compensation Commission Appeals Panel has
previously dealt with the issues you will now decide.  The Appeals Panel
found that: Erasmo Marez was injured in the course and scope of his employment
on July 7, 2004; and that Erasmo Marez sustained disability from August 9, 2004
to March 28, 2005 as a result of his work-related injury.  You may
consider this finding as evidence, although you are not bound by it.

The jury was then
instructed to answer AYes@ or ANo@ to the following
question:

QUESTION NO. 1

 

Do you find that Erasmo Marez was injured in the
course and scope of his employment on July 7, 2004?

AInjury@ means damage or harm to the physical structure of the body
and/or a disease or infection naturally resulting from the damage or harm. 
This includes an aggravation of a prior injury if the aggravation occurs during
the course and scope of employment.

ACompensable Injury@ means an injury
that arises out of and In the course and scope of the employment for which
compensation is payable.

The
jury unanimously answered ANo@ to this question.[1]  

On May 30, 2006, the trial court granted a JNOV and entered
a final judgment affirming the TWCC appeals panel=s decision. 
By a separate order, the trial court ordered Ace to pay attorney=s fees of
$17,042.36 to Marez=s attorneys.  This appeal followed.

Ace=s Issues on Appeal

Ace raises two issues on appeal: (1) the trial court erred
in disregarding the jury=s verdict and rendering a JNOV in favor of
Marez because there was more than a scintilla of evidence upon which the jury
could have returned its ANo@ verdict; and (2)
if this court reverses the JNOV, then Marez is no longer the prevailing party,
and the trial court=s award of attorney=s fees and
expenses is in error and should be reversed.  Central to Ace=s appeal is its
contention that Marez=s testimony was inconsistent and
conflicted with the testimony of the Trinity Industries employees, and so the
juryCas the sole judge
of the credibility of the witnessesCwas entitled to
resolve the inconsistencies and conflicts against Marez.  Because our
resolution of Ace=s issues turns on the standard of review
we apply to the JNOV and the testimony and other evidence presented at trial,
we discuss both in detail below.

 

The Applicable Law and the Standard of Review Applied to a JNOV

The Applicable Law

Under the Texas Workers= Compensation Act,
only injuries occurring in the course and scope of employment are
compensable.  Payne v. Galen Hosp. Corp., 28 S.W.3d 15, 18 (Tex. 2000).  The Act provides that a party who has exhausted its administrative
remedies and is aggrieved by a final decision of the appeals panel may seek
judicial review of the appeals panel decision.  Tex. Lab. Code ' 410.251 (Vernon
2006).  Issues regarding compensability or eligibility for benefits may be
tried to a jury and are subject to a modified de novo review. See id. ' 410.301 (Vernon
2006); Tex. Workers= Comp. Comm=n v. Garcia, 893 S.W.2d 504,
528 (Tex. 1995).  Review is limited to the issues that were before the
TWCC appeals panel.  Tex. Lab. Code
' 410.302(b)
(Vernon 2006).  The party appealing the appeals panel=s decision bears
the burden of proof by a preponderance of the evidence.  Id.  410.303
(Vernon 2006).  Although the trial court is required to inform the jury of
the appeals panel=s decision in the jury charge, the jury is
not required to accord that decision any particular weight.  See id.
' 410.304(a)
(Vernon 2006); Garcia, 893 S.W.2d at 515.

The Standard of Review Applied to a JNOV

The trial court may disregard a jury=s verdict and
render a JNOV if no evidence supports one or more of the jury=s findings or if a
directed verdict would have been proper.  See Tex. R. Civ. P. 301; Tiller v.
McClure, 121 S.W.3d 709, 713 (Tex. 2003).  To determine whether the
trial court erred in rendering a JNOV, we review the entire record, crediting
favorable evidence if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

 

The jury is the sole judge of witnesses= credibility, and
it may choose to believe one witness over another; a reviewing court may not
impose its own opinion to the contrary.  Id. at 819.  Jurors
may disregard even uncontradicted and unimpeached testimony from disinterested
witnesses.  Id. at 820.  A[W]henever
reasonable jurors could decide what testimony to discard, a reviewing court
must assume they did so in favor of their verdict, and disregard it in the
course of legal sufficiency review.@  Id.

Circumstantial evidence may prove any material fact, so
long as it transcends mere suspicion.  KPH Consolidation, Inc. v.
Romero, 102 S.W.3d 135, 145 (Tex. 2003); Lozano v. Lozano, 52 S.W.3d
141, 149 (Tex. 2001) (Phillips, C.J., concurring and dissenting).  The
material fact must be reasonably inferred from the known circumstances.  Romero,
102 S.W.3d at 145.  It may not be proved by unreasonable inferences
from other facts and circumstances or by piling inference upon inference. 
Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435
S.W.2d 854, 858 (Tex. 1968).  In claims or defenses supported only by
meager circumstantial evidence, the evidence is legally insufficient if jurors
would have to guess whether a vital fact exists.  City of Keller, 168 S.W.3d at 813.  A>When the circumstances are equally
consistent with either of two facts, neither fact may be inferred.=@ Id.
(quoting Tubeline, A Div. of Indal, Inc. v. Risica & Sons, Inc., 819
S.W.2d 801, 813B14 (Tex. 1991)).  In such cases, the
reviewing court must Aview each piece of circumstantial
evidence, not in isolation, but in light of all the known circumstances.@  Id.
at 813B14  (quoting Lozano
v. Lozano, 52 S.W.3d 141, 167 (Tex. 2001)). 

Circumstantial evidence often requires a fact finder to
choose among opposing reasonable inferences.  Lozano, 52 S.W.3d at
148.  And this choice, in turn, may be influenced by the fact finder=s views on
credibility.  Id. at 148B49.  Thus, a
jury is entitled to consider the circumstantial evidence, weigh witnesses= credibility and
make reasonable inferences from the evidence it chooses to believe.  Id. at 149.  Because it is the jury=s province to
resolve conflicting evidence, we must assume that jurors resolved all conflicts
in accordance with their verdict.  See City of Keller, 168 S.W.3d
at 820.  

 

AThe final test for legal sufficiency must
always be whether the evidence at trial would enable reasonable and fair‑minded
people to reach the verdict under review.@  Id. at 827.  If the evidence Awould enable reasonable and fair‑minded
people to differ in their conclusions, then jurors must be allowed to do so.@  Id. at 822.  We do not substitute our judgment for that of the trier‑of‑fact
if the evidence falls within this zone of reasonable disagreement.  Id.

The Testimony and Evidence at Trial

At trial, the jury heard testimony from Marez and two
Trinity Industries employees.  The two Trinity Industries employees were
Jerry Peters, Marez=s immediate supervisor, and Kevin
Klubertanz, the plant manager.  As discussed below, Marez=s testimony
concerning his injury and the surrounding circumstances was at times
inconsistent and often controverted by that of Peters and Klubertanz.

Through an interpreter, Marez testified that he worked for
nearly 30 years as a welder for Trinity Industries, and the last five of those
years were spent in the same shop.  On July 7, 2004,while working for
Trinity Industries, Marez was pushing a welding gantry by himself when it fell
off its rail, causing him to slip and injure his back.  Immediately after
the incident, Marez told his supervisor, Jerry Peters, about his injury. 
Marez also testified that there was a witness who saw him get hurt, but the
witness would not come forward because Ahe didn=t want to get into
any trouble.@  Marez testified that he told Peters about this
witness.  However, Marez admitted that when an adjustor for Ace called him
on August 4, 2004, to interview him concerning the incident, he did not tell her
that there were any witnesses.  

Peters denied that Marez told him on July 7, 2004, he had
been injured while at work or that there was a witness to the incident. 
According to Peters, the first time he heard about Marez=s claimed injury
was when Marez told him about it during a meeting on August 3, 2004.[2]  Further, Peters
testified that he had not heard anything about a witness to the incident until
he was asked about it at trial.  However, Peters admitted that he had no
reason to believe Marez was not injured while pushing a welding gantry as he
claimed.  

 

The events that transpired at the August 3 meeting, which
took place in the safety and human resources office of Trinity Industries, were
also disputed.  Marez and Peters attended the meeting along with Kevin
Marks, the shop foreman, and Quentin Oropeza, the human resources
manager.  Kevin Klubertanz, the plant manager, joined the meeting
later.  Peters testified that the purpose of the meeting was to discuss
Marez=s unhappiness with
the hours he was working and with being sent home due to a work slow down at
the company.  According to Peters, August 3 was not the first time Marez
had been sent home from work.  He also testified that, during the slow
period, Marez and other workers had been moved around to different jobs to keep
them employed.  Similarly, Klubertanz testified that when he entered the
meeting, he asked what was going on, and was told that Marez was upset because
he was being sent home.  Klubertanz testified the ensuing discussion
concerned man hours and workers being sent home from work because the company
was between projects.

Marez=s account of the of the meeting differed
substantially from that of Peters and Klubertanz.  Marez testified the
purpose of the meeting was to discuss his complaint that he was being switched
to a different department.  He denied that the reason for the meeting was
to discuss a complaint that he was not getting enough hours to work.  He
also stated that the problem started that day, and he denied ever having been
sent home from work previously due to a lack of work.  Marez also denied
being told at the meeting that there was a slow down in work at Trinity
Industries.

 

The parties also disputed whether Marez quit or was fired
during the August 3 meeting.  Peters testified that Marez was not
satisfied with the company=s explanation for the reduction in work
hours and that Marez first asked to be laid off and then threatened to
quit.  After Marez threatened to quit his job, he said, AOh, yes, what
about my on-the-job injury?@  Marez was then asked if he had
reported the injury, andCin front of PetersChe said he had
reported it to Peters.  Peters denied that Marez had reported it to him.[3]  According to
Peters, Klubertanz then asked Marez if he were quitting, and Marez said he
was.  Peters testified that Marez=s employment was
not terminated by anyone in the meeting.  After Marez quit, Peters
testified, a report was filled out concerning the injury Marez had reported at
the meeting.

Marez testified that he did not threaten to quit, but was
fired.  He testified that he then told the attendees at the meeting about
his injury at work.  When asked whether the people in the meeting were
surprised to learn that Marez was claiming an on-the-job injury, he responded, AIt=s possible. 
I just told them.@  Marez further testified that when
the plant manager, Klubertanz, came into the meeting and was told that Marez
had an injury and wanted to see a doctor, Klubertanz said they were not sending
anyone to the doctor and that if Marez was unhappy he should just leave.

Klubertanz testified, like Peters, that Marez first asked
to be laid off because of the lack of work, and then threatened to quit. 
Klubertanz also testified that when he asked Marez if he were quitting his job,
Marez said, Ayes.@  After this exchange, Marez said, ABy the way, I was
hurt on the job.  What are you going to do about that?@  Klubertanz
further testified that Marez claimed in the meeting that he had reported the
injury to Peters, but Peters disputed this.  Klubertanz denied that Marez
ever told him that he needed to go to a doctor, and he denied that he would try
to prevent his employees from seeking medical attention after making a worker=s compensation
claim.

Klubertanz also testified that, prior to that meeting, he
did not know Marez was claiming an on-the-job injury.  However, on
cross-examination, he admitted that he did not witness Marez=s fall and he
could not tell the jury Marez was not injured as he said he was.

 

Marez=s conversation with Ace=s adjuster the day
after the meeting, August 4, also differed from his trial testimony. 
Although Marez testified that he was fired at the August 3 meeting, he told the
adjuster he had quit.  Marez explained that he did so because Oropeza, the
human resources manager, Alied@ and said that he
was Agoing to write on
the application@ that Marez had quit.  And, as noted
above, although Marez testified that there was a witness to the alleged
incident, he admitted he did not tell the adjustor that there were any
witnesses.

Marez also admitted that he never saw a doctor or sought
medical attention for his alleged injury between July 7, 2004, and August 3,
2004.  He testified that he wanted to see a doctor but could not because
he did not have any money.  However, he told the adjustor on August 4,
that he had not yet made up his mind whether he was going to see a
doctor.  When he did finally see a doctor, on August 9, 2004, it was a
doctor to which his attorney referred him.  

Marez said that every doctor that he had seen had indicated
to him that he was Ain fact@ injured on the
job.  Various medical records concerning Marez=s treatment for
his injury were also submitted into evidence.  However, Marez agreed that
he told every doctor he saw how he was injured, and all the information about
how his accident occurred came from him and his doctor=s records. 

Marez also testified that, in February 2005, he went to
work for three weeks as a welder for McGuire and Smith.  He testified
that, before being hired by McGuire and Smith, he had to take a pre-employment
physical examination.  Marez admitted that, between the time he worked for
Trinity Industries and McGuire and Smith, he held himself out as being ready,
willing, and able to work.  However, Marez testified that he had to do so
because he was not receiving benefits at the time. 

The Law Applied to the Facts

Ace contends the jury was entirely within its sole province
to discredit Marez=s trial testimony and to resolve the
conflicting testimony in Ace=s favor.  Thus, Ace maintains the
record contains more than a scintilla of evidence to support the jury=s verdict. 
We agree.

 

The record reflects that Marez=s testimony was
internally inconsistent and in conflict with the testimony of Peters and
Klubertanz concerning the circumstances surrounding the alleged injury and
Marez=s subsequent
actions.  The jury could have resolved the conflicting testimony to
determined that Marez did not sustain a compensable injury on July 7, 2004,
because he (1) had no witness to the incident, (2) did not report an injury to
his supervisor on the day it allegedly occurred, (3) only mentioned his alleged
injury after he became dissatisfied and quit his job, (4) did not seek medical
attention until a month later and only after his attorney referred him to a
doctor, (5) later passed a physical examination and took another job as
welder.  Given the amount of conflicting testimony, the jury could have
determined that Marez simply was not credible when he testified about his
injury.  On this record, therefore, the jury was entitled, in the exercise
of its role as the sole judge of the credibility of the witnesses and the
weight to be given their testimony, to disbelieve Marez=s account of his
injury and to believe Peters and Klubertanz.  See City of Keller,
168 S.W.3d at 819.  

Marez contends that the burden was on Ace to prove by a
preponderance of the evidence that Marez did not suffer a compensable injury on
July 7, 2004, and it failed to carry its burden because the evidence Ace
presented consisted solely of speculation that is no evidence to support the
jury=s verdict. 
According to Marez, the testimony concerning the unidentified witness, the
reasons for Marez=s departure from Trinity Industries, and
when Marez informed his employer of his injury is meager circumstantial
evidence from which equally plausible but opposite inferences could be
drawn.  Marez claims these issues are Amere conjecture@ and are legally
insufficient to support the jury=s finding. 
Thus, Marez argues, one Acannot fairly infer@ from the
testimony presented by Ace that Marez did not suffer a compensable injury on
July 7, 2004, or that Marez did not have a disability from August 9, 2004, to
March 28, 2005, as a result of his injury.

 

Marez=s argument appears to be that the jury was
not entitled to infer from the circumstantial evidence presented that he did
not suffer a compensable injury on July 7, 2004.  However, we disagree
that this fact could not be reasonably inferred from the known
circumstances.  As outlined above, Ace presented testimony that conflicted
with Marez=s on several issues relating to his alleged injury and
his subsequent actions.  The jury was entitled to believe one witness and
disbelieve another when resolving these issues.  Moreover, the evidence
was not merely conflicting between Marez and the Trinity Industries employees;
Marez=s own testimony
was internally inconsistent.  As City of Keller instructs, because
most credibility questions are Aimplicit rather than explicit@ in a jury=s verdict, we Amust assume jurors
decided all of them in favor of the verdict if reasonable human beings could do
so.@  City of
Keller, 168 S.W.3d at 819.  Reviewing the evidence in this light, we
cannot say that the jury=s resolution of the credibility issues, or
its determination of the ultimate fact based on its resolution of the
credibility issues, was unreasonable.

Moreover, we disagree that this evidence amounts to no more
than Ameager
circumstantial evidence from which equally plausible but opposite inferences
could be drawn.@  As outlined above, the jury had
much more before it from which it could determine the ultimate fact against
Marez without resorting to guesswork.  At a minimum, the evidence presented
at trial was sufficient to enable reasonable and fair‑minded people to
differ in their conclusions.  See id. at 827.  Because this
evidence falls within the zone of reasonable disagreement, we decline to
substitute our judgment for that of the jury.  See id.  We
therefore sustain Ace=s first issue and hold that the trial
court erred in disregarding the jury=s verdict and
rendering a JNOV in favor of Marez.

Having sustained Ace=s first issue, we
also sustain Ace=s second issue and reverse the trial court=s award of
attorney=s fees and
expenses.  See Tex. Lab.
Code ' 408.221(c) (Vernon 2006) (providing that an insurance
carrier that seeks judicial review of a final decision of the appeals panel is
liable for reasonable and necessary attorney=s fees if the
claimant prevails on an issue on which judicial review is sought by the
insurance carrier).  

 

Erasmo Marez=s Cross-Point

In a cross-point, Marez contends that, if there was more
than a scintilla of evidence to support the jury=s verdict, it was
against the great weight and preponderance of the evidence, and this court
should reverse the jury=s verdict and remand the case to the trial
court for a new trial.  By this cross-point, we understand Marez to be
challenging the factual sufficiency of the evidence.

Standard of Review

In conducting a factual sufficiency review, we consider and
weigh all of the evidence in the case, including the evidence contrary to the
jury=s verdict.  See
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex. 1998); Plas-Tex.,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  However,
we must be mindful that jury is the sole judge of the credibility of witnesses
and the weight to be given to their testimony, and we may not substitute our
judgment for that of the jury.  See Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Maritime Overseas Corp.,
971 S.W.2d at 407.  We set aside a finding for factual insufficiency only
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986) (per curiam). 

Analysis of Marez=s Cross-Point

Marez contends the jury=s verdict is
against the great weight and preponderance of the evidence because (1) he provided
credible testimony that he was injured in the course and scope of his
employment on July 7, 2004, (2) every doctor from whom he sought medical care
indicated that he was in fact injured on the job, and (3) Peters and Klubertanz
were both unable to testify that he was not injured on the job as he testified
he was.  We address each of these arguments in turn.

 

First, Marez contends he provided credible testimony which
established that he sustained a compensable injury on July 7, 2004. 
However, it is not for MarezCor this courtCto determine
whether his testimony was credible.  It was the jury=s sole province to
determine Marez=s credibility and the weight to be given
his testimony; therefore, the jury was entitled to resolve this issue against
Marez.  We also  note that, in the court=s charge, the
trial court informed the jury of the appeals panel=s previous
decision in favor of Marez, as it was required to do.  However, as the
Texas Supreme Court instructs in Texas Workers= Compensation
Commission v. Garcia, the jury was not required to accord that decision any
particular weight.  See Garcia, 893 S.W.2d at 515, 528.  Similarly, the jury was
instructed that it may consider the appeals panel=s decision as
evidence, but it was Anot bound by it.@

Second, Marez asserts that every doctor he saw indicated he
was injured on the job.  However, Marez admitted that he told every doctor
how he was injured; thus, all of the information the jury had before it
concerning how his accident occurredCincluding his
medical recordsCcame from Marez.   Thus, the
jury could have discounted the weight of this testimony and the medical
records.

 

Finally, Marez points to the testimony of Peters and
Klubertanz, who were both unable to testify that Marez was not injured on the
job as he said he was.  Because these witnesses were unable to refute
Marez=s claim that he
suffered a compensable injury, Marez claims their testimony was Aspeculative and
circumstantial from which [an] equally plausible but opposite inference could be
drawn,@ and thus
insufficient.  However, this testimony of Peters and Klubertanz was not
the only testimony or evidence the jury had before it when it reached its
verdict.  As discussed above, the jury also considered, among other
things, whether Marez timely reported his alleged injury, whether there was a
witness to the injury, why Marez failed to seek medical care for approximately
a month after he was allegedly injured (and then only after he was referred to
a doctor by his attorney), and whether Marez quit or was fired from Trinity
Industries before he informed its employees of his injury.  These issues
turn on the jury=s resolution of the witnesses=s credibility, and
on this record we decline to substitute our judgment for that of the
jury.  See Golden Eagle Archery, 116 S.W.3d at 761; Maritime
Overseas Corp., 971 S.W.2d at 407. 

Thus, after considering and weighing all of the evidence,
both supporting and conflicting with the jury=s finding that
Marez was not injured in the course and scope of his employment on July 7,
2004, we conclude the jury=s verdict is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  We
therefore hold that the evidence is factually sufficient to support the jury=s verdict and overrule
Marez=s cross-point.

Conclusion

We reverse the trial court=s judgment and
order awarding attorney=s fees and render judgment in favor of Ace
American Insurance Company.  

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed April 12, 2007.

Panel
consists of Chief Justice Hedges and Justices Hudson and Edelman.














[1]  The jury did not answer Question 2, which was conditioned on a AYes@ answer to
Question 1.  Question 2 asked, ADo
you find that Erasmo Marez had disability from August 9, 2004 to March 28, 2005
as a result of his compensable injury?@ 
ADisability@
was defined to mean Athe inability, as a result of a compensable injury, to
obtain and retain employment at wages equivalent to the pre-injury wage.@

 





[2]  A Trinity Industries accident report also
reflects Marez reported his injury on August 3, 2004.





[3]  Peters also testified that, when an employee
reports an injury, he is responsible for filling out the proper forms at that
time.  Marez=s counsel sought to demonstrate that Peters was
motivated to conceal Marez=s injury report
because the Trinity Industries safety program includes bonuses that are tied to
the number of incidents that occur.  However, Peters also testified that
he could be reprimanded if he failed to report an injury that was reported to
him by a worker.  On redirect examination, Peters testified that he had
never been reprimanded for not reporting a worker=s injury, and he did not fail to report Marez=s injury in order to get a bonus.